## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GREGORY GARRETT BROWN,    :
      Plaintiff             :      CIVIL ACTION NO. 3:15-CV-0761
                           :      (Judge Nealon)
      v.                   :
                           :
ANTHONY LUSCAVAGE, ET AL.,[1]:
      Defendants        :

### MEMORANDUM

On April 17, 2015, Plaintiff, Gregory Garrett Brown, an inmate currently

incarcerated at the State Correctional Institution, Coal Township, Pennsylvania,

("SCI-Coal Township") filed the above-captioned pro se action against Anthony

Luscavage; Dennis Brumfield; "Mr. Krzykowski;" Brook Young; Brenda

Jeremiah; "Ms. Herrold;" "Mr. Peterson;" S.E. Young; "Mr. Eveland;" Nancy

Wilson; T. Armstrong; "Mr. Wickham;" M.F. Touchloskie; "Mr. Walker;" "Mr.

D.L.;" "Mr. Confer;" Tim Erdly; and D. Swartz,[2] asserting causes of action

pursuant to 42 U.S.C. § 1983. (Doc. 1). On April 17, 2015, Plaintiff filed a

---

1.    Several Defendants' names are misspelled on the docket sheet in the above-captioned action. By separate Order, the Court will direct the Clerk of Court to amend the docket sheet to accurately reflect the correct spelling of those names.

2.    Although identified as Defendants in the caption and body of the original complaint, Defendants Confer, Peterson, and "Mr. D.L." are not listed as Defendants on the docket sheet in the above-captioned action. By separate Order, the Clerk of Court will be directed to add "Mr. Confer, Registered Nurse," "Mr. Peterson, Lieutenant," and "Mr. D.L., Sgt." as Defendants.

motion for leave to proceed in forma pauperis. (Doc. 2). On April 23, 2015, a thirty (30) day administrative order was filed, which informed Plaintiff that his motion to proceed in forma pauperis was inadequate. (Doc. 9). On May 20, 2015, Plaintiff filed a motion for an extension of time to comply with the April 23, 2015, administrative order. (Doc. 6). On May 27, 2015, Plaintiff's motion was granted and Plaintiff was given until June 10, 2015, to comply with the administrative order. (Doc. 7). On June 5, 2015, Plaintiff filed a request for the proper in forma pauperis form. (Doc. 8). The Clerk of Court for the Middle District of Pennsylvania sent Plaintiff the proper in forma pauperis form and instructed him that he had until June 27, 2015, to complete and submit a proper in forma pauperis motion. (Doc. 9). On June 22, 2015, Plaintiff filed a proper motion to proceed in forma pauperis. (Doc. 10). While Plaintiff indicates in his motion to proceed in forma pauperis that he has filed more than three or more actions or appeals in a court of the United States that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, he also alleges that he is in imminent danger of serious physical injury. (Id. at pp. 1-2). On July, 23, 2015, Plaintiff filed an amended complaint, (Doc. 12), and on July 29, 2015, Plaintiff filed an "informal complaint." (Doc. 13).

District courts are obligated to screen civil complaints filed by pro se

litigants who wish to proceed in forma pauperis, deny such leave to prisoners who have on three of more prior occasions filed frivolous or meritless claims in federal court, and dismiss these inmate complaints, unless the inmate alleges facts showing that he is in imminent danger of serious bodily harm. Review of Plaintiff's complaint, amended complaint, and "informal complaint," has been undertaken and, as set forth in detail below, Plaintiff's motion to proceed in forma pauperis will be granted in part and denied in part. Specifically, only one claim satisfies the imminent danger exception to 28 U.S.C. § 1915(g) and thus, Plaintiff will be allowed to proceed without pre-paying the filing fee on that claim. The remaining claims will be stricken without prejudice.

## I.    PLAINTIFF'S ALLEGATIONS

Plaintiff claims that during January 2015, Defendant "Ms. Harrold" allegedly deprived Plaintiff of adequate medical care when he sent a request slip to Defendant Harrold in order to get his "Geodon restarted/reordered but, [he] got no response." (Doc. 1, p. 2). Plaintiff alleges that he then spoke to "a male psychologist about a week later . . . and he said, 'I will let [Defendant] Harrold know that you would like to have your Geodon reordered.'" (Id.). According to Plaintiff, Defendant Harrold "never came" to see Plaintiff about his request to restart his Geodon even though she had "knowledge of it." (Id.).

3

From February 12, 2015, to March 17, 2015, Plaintiff claims that Defendant Brumfield refused to let Plaintiff attend his program review hearings "out of retaliation due to the lawsuit [he] filed against the superintendent, Mooney." (Doc. 1, p. 8). During this same period, Plaintiff claims that Defendant Anthony Luscavage "failed to abate all of the unintelligent, inhumane, and partial treatment of the Plaintiff." (Id. at pp. 7-8). From February 28, 2015, to March 1, 2015, Plaintiff alleges that Defendant Officer M.F. Touchloskie harassed Plaintiff out of retaliation due to a lawsuit and grievances he filed against Defendant Touchloskie's co-workers. (Id. at p. 4). Specifically, Defendant Touchloskie allegedly placed a divider in front of Plaintiff's room at the Psych Observation Center, which led to Plaintiff being deprived of his "meat loaf." (Id.). On March 1, 2015, the divider was removed. (Id.).

Plaintiff also alleges that from February 2015 to March 2015 "Lieutenants Peterson, S.E. Young, and, Eveland all failed to abate the unintelligent, inhumane, and partial treatment that their officers performed towards the Plaintiff (tampering with [his] food, mail and laundry, as well as depriving [him] of his right to shower)." (Id. at p. 3).

During March 2015, Plaintiff claims that Defendants Brook Young and "Ms. Jeremiah" deprived him of adequate medical care. (Id. at p. 2). In regards to

Defendant Young, Plaintiff states that he spoke with her "about getting [his] psychological medication reordered and, Ms. Young said, 'okay.'" (Doc. 1, p. 2). Plaintiff, having not yet received the medication, Geodon, allegedly sent Defendant Young another request. (Id.). On March 27, 2015, Plaintiff claims that Defendant Young entered the Restricted Housing Unit to speak with another inmate, but refused to speak with Plaintiff about his medication and thus, "deprived [Plaintiff] of adequate medical care." (Id.). In regards to Defendant Jeremiah, Plaintiff claims that on March 20, 2015, she told Plaintiff that she would reorder his medication. (Id.). Plaintiff alleges that Defendant Jeremiah never reordered the medication. (Id.).

Plaintiff also claims that during March 2015 Defendant Nancy Wilson violated his "First amendment right" by refusing "to send [his] legal mail out to the U.S. Dept. of Justice in Washington, D.C." (Id. at p. 3). On March 13, 2015, Plaintiff alleges that Defendant Armstrong "violated [his] rights." (Id.). On March 25, 2015, Plaintiff states that Defendant Officer Walker conspired with "Lt. Krzykowski in depriving [Plaintiff] of [his] shower out of retaliation due to the fact that Plaintiff filed a lawsuit against Walker's coworkers." (Id. at pp. 4, 8). Plaintiff claims that Defendant Walker "said, 'you asking me to give you a shower after you filed a lawsuit against my friends (coworkers).'" (Id. at p. 4).

Plaintiff claims that from March 27, 2015, to March 29, 2015, Defendant Officer Wickham "harassed the Plaintiff out of retaliation." (Doc. 1, p. 4). Specifically, Plaintiff alleges that Defendant Wickham "said, 'I'm going to harass you Brown until you commit suicide because, you filed a lawsuit on my coworkers (Longenderfer, Seedor, etc.)." (Id.). On March 31, 2015, Defendant "D.L." allegedly harassed Plaintiff in retaliation. (Id.). Specifically, Defendant D.L. retaliated because Plaintiff "told Sgt. D.L. that [he] was going to write him up for giving an inmate contraband." (Id.). Plaintiff claims that Defendant D.L. then began to harass Plaintiff and said "'I'm gonna keep coming at you Brown since you want to write me up and tell on me.'" (Id.).

On April 2, 2015, Plaintiff allegedly conveyed to Defendant Confer that he was "spitting up blood" because of his inhalation of the "coal-ash in this area." (Id. at p. 5). Plaintiff claims that despite being informed about Plaintiff's condition, Defendant Confer walked away "without giving Plaintiff adequate medical care." (Id.).

On April 8, 2015, Defendants Erdly and Emerich allegedly turned off Plaintiff's water in his cell "out of retaliation due to the lawsuit Plaintiff filed against [their] coworkers." (Id.). On April 10, 2015, Plaintiff alleges that Defendant Swartz refused to inform Plaintiff that Plaintiff's brother died "out of

6

retaliation due to the fact that [Plaintiff] filed a grievance about [Defendant Swartz] not returning [Plaintiff's] form [he] gave an officer." (Doc. 1, p. 6).

Plaintiff requests that each Defendant pay one million dollars ($1,000,000.00), for the "prison officials to give [Plaintiff] what [he is] entitled to: hearings, grievance forms, request slip forms, yard exercise, showers," and adequate medical care, for prison officials to "stop depriving [Plaintiff] of medical care out of retaliation due to the fact [he] filed grievances and, a lawsuit against them," and for the prison officials to "stop trying to do serious bodily harm to [Plaintiff] out of retaliation due to the grievances and lawsuits [he] filed against them." (Id. at p. 8).

In addition to the allegation in his complaint, Plaintiff also claims in his motion to proceed in forma pauperis that he is under imminent danger of serious physical harm. (Doc. 10, pp. 1-2). After acknowledging that he has brought three (3) or more actions or appeals in a court of the United States that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, Plaintiff states that his action is "imminent" because the Defendants continue to "retaliate and, are trying to do bodily harm to me." (Id. at p. 1). Specifically, Plaintiff goes on to allege that "[t]he Defendants are putting poison in [his] food to cause [him] to have a heart-attack." (Id. at p. 2). In response to the

portion of his motion specifically asking him to explain why he is under imminent danger of serious physical harm,  Plaintiff claims that "officials, J. Seedor, Burrows, Brino, Walker, D. McCoy, Hayes, Cooper, Sgt. Greene, Sgt. Erdly, K.J. Smith, Kratz, Treon, Fowler, Wickham, Longenderfer, etc. are all trying to physically injure [Plaintiff] for filing this suit." (Doc. 10, p. 2).  Plaintiff also claims he is under imminent danger of serious physical injury because the Defendants are "tampering with [his] outgoing [and] incoming" legal mail. (Id.).

On July 23, 2015, Plaintiff filed an amendment to his complaint. (Doc. 12). Plaintiff names the following as Defendants: Anthony Luscavage; Dennis Brumfield; Vincent Mooney; Trisha Kelley; John E. Wetzel; Edward Baumbach; "Mr. Tripp;" "Mr. Long;" "J. Madden;" "J. Wieker;" "Mr. Kilmer;" "Mr. Kistler;" "Mr. Krzykowski;" "Mr. Dalton;" S.E. Young; "Mr. Eveland;" A. Peters;  J. Fago; S.W. Greene; P.R. McDonald; "Mr. Emerich;" "Mr. Fowler;" "Mr. Batzuk;" "Mr. Neitz;" B.P. Clayton; Brad Ritchey; Theresa Shaffer; Michael Shadle; Michael Gorbacio; Jennifer Shaud; Linda Chismar; Karen Merritt; "Ms. Gessner;" "Mr. Strait;" Brian Davis; "Ms. Herrod;" Brook Young; Brenda Jeremiah; D. Swartz; F. Nunez; R. Tomcavich; T. Armstrong; Nancy Wilson; "Dortina Varner;" Aaron Duncan; Marilynn Noel; Michael Comic; John Snyder; N.D. Kaleta; "Mr. Ederly;" "Mr. Weisenberger;" J.J. Garancosky; Robert Schwartz; M.J. Swartzlander; "J.A.

Murrhy;" D.E. Morey; "Mr. Cooper;" "Mr. Lear;" J.A. Shay; "Mr. Brino;" B.J.

Fabian; K.J. Smith; J. Seedor; "Mr. Burrows;" "Mr. Keretski;" "Mr.

Longenderfer;" "Mr. Walker;" A.P. Rodriguez; "Mr. Bainbridge;" J.M. Heistand;

M.F. Touchloskie; "Mr. Wickham;" "Mr. Hayes;" "Mr. Shultz;" D. McCoy; "Mr.

Treon;" "Mr. Kratz;" B.L. Stamm; and John Does. (Doc. 12, pp. 1-3).  Plaintiff

alleges additional claims in his amended complaint.  Specifically, Plaintiff claims

that from:

> November, 2014, and, on-going through the month of July 10,
> 2015, all of the above Defendants showed racially based
> mistreatment and punishment either by their actions or, by
> becoming a conspirator due to the fact that they failed to abate
> it after having full and complete knowledge of the racially
> based mistreatment.

(Id. at pp. 3-4).  Plaintiff alleges that the Defendants "racially based actions were

motivated by evil motive or intent or involved reckless or callous indifference to

Plaintiff's rights as a prisoner."  (Id. at p. 4).  Finally, Plaintiff claims that "[i]t was

all done out of retaliation due to the fact that the plaintiff filed grievances and,

took legal action against the staff at S.C.I. Coal Twp. as well as staff at the"

Pennsylvania Department of Corrections.  (Id.).  For relief, Plaintiff requests

compensatory and punitive damages equaling one (1) million dollars

($1,000,000.00) from each Defendant and "any other relief that the Court may see

fitting." (Doc. 12, p. 4).

On July 29, 2015, Plaintiff filed an "informal complaint" alleging that prison officials are stealing money from his prison account. (Doc. 13, pp. 1-2). Plaintiff claims that he spent nineteen dollars and seventy-one cents ($19.71) on commissary items, which he never received. (Id. at p. 1). Plaintiff alleges that he needs his "commissary items to do my legal cases I'm facing." (Id.). Plaintiff seeks to either obtain the commissary bag he purchased for nineteen dollars and seventy-one cents ($19.71), or a refund in that amount. (Id. at p. 2).

## II.   DISCUSSION

Pursuant to the Prison Litigation Reform Act's ("PLRA") "three strikes" provision, a prisoner may not:

> "bring a civil action or appeal a judgment in a civil action or
> proceeding" if the prisoner has, on three or more occasions, had
> an action or appeal "dismissed on the grounds that it is
> frivolous, malicious, or fails to state a claim upon which relief
> may be granted, unless the prisoner is under imminent danger
> of serious physical injury."

Ball v. Famiglio, 726 F.3d 448, 455-56 (3d Cir. 2013) (quoting 28 U.S.C. § 1915(g)). "Dismissals of actions entered prior to the effective date of the PLRA are counted toward the 'three strikes' referred to in 28 U.S.C. § 1915(g)." Milhouse v. Sage, 2014 U.S. Dist. LEXIS 114413, at *2 (M.D. Pa. 2014) (Rambo,

J.) (citing 28 U.S.C. § 1915(g); <u>Kenner v. Pennsylvania Bd. of Probation and Parole</u>, 128 F.3d 143, 144-45 (3d Cir 1997) (holding that dismissals based on frivolousness before 1996 "are included among the three that establish the threshold for requiring a prisoner to pay the full docket fees unless the prisoner can show s/he is 'under imminent danger of serious physical injury.'").

Plaintiff states that he has brought three (3) or more actions or appeals in a court of the United States that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. (Doc. 10, p. 1). An examination of court records confirms that Plaintiff has filed at least three previous civil actions in which <u>in forma pauperis</u> status has been granted and which have all been dismissed under 28 U.S.C. § 1915(e)(2). <u>See, e.g., Brown v. Palakovich</u>, 1991 U.S. Dist. LEXIS 9269 (E.D. Pa. 1991); <u>see also Brown v. Lawler, et al.</u>, 08-CV-0400 (M.D. Pa. Dec. 17, 2008) (Nealon, J.) (Finding that "Plaintiff's section 1983 complaints in case numbers 2:91-cv-4213, 2:91-cv-6874, 2:91-cv-6876, 2:95-cv-1604, 2:95-cv-1613, 2:96-cv-1494, and 2:96-cv-3309 were each dismissed as legally frivolous pursuant to section 1915(d)" and "[c]learly, Plaintiff has struck out under the statute."). Accordingly, Plaintiff has reached the statutory limit set forth in 28 U.S.C. § 1915(g), and is precluded from obtaining <u>in forma pauperis</u> status unless he alleges facts to show that he is in imminent danger

of serious physical injury, which would excuse him from the restrictions under section 1915(g).

"'Before denying leave to proceed [in forma pauperis], courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in 'imminent danger' of serious physical injury.'" Ball, 726 F.3d at 467 (quoting Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003)). "'The imminent danger exception allows the district court [or an appellate court] to permit an otherwise barred prisoner to file a complaint [in forma pauperis] if the prisoner could be subject to serious physical injury and does not then have the requisite filing fee.'" Id. (quoting Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3d Cir. 2001)) (first alteration in original). The Third Circuit Court of Appeals has stated that "Congress included the exception as a 'safety valve for the "three strikes" rule' because it '[r]ecogniz[ed] that it could take prisoners [with three strikes] a significant period of time to obtain the filing fee.'" Id. (alterations in original).

"'Imminent' dangers are those dangers which are about to occur at any moment or are impending." Abdul-Akbar, 239 F.3d at 315. "By using the term 'imminent,' Congress indicated that it wanted to . . . prevent impending harms, not those harms that had already occurred." Id. "The danger must also be imminent at the time the complaint or appeal is filed." Ball, 726 F.3d at 467 (citing Abdul-

Akbar, 239 F.3d at 312; Banos v. O'Guin, 144 F.3d 883, 885 (5th Cir. 1998)).

"Pro se allegations of imminent danger must be evaluated in accordance with the liberal pleading standard applicable to pro se litigants." Prall v. Bocchini, 421 F. App'x 143, 145 (3d Cir. 2011) (Gibbs v. Cross, 160 F.3d 962, 966 (3d Cir. 1998); Gibbs v. Roman, 116 F.3d 83, 86 & n.6 (3d Cir. 1997)). "This standard does not require district courts to accept 'allegations that are fantastic or delusional and rise to the level of the "irrational or wholly incredible."'" Prall, 421 F. App'x at 145 (quoting Cross, 160 F.3d at 967).

Here, Plaintiff is alleging that he is under imminent danger of serious physical harm. (Doc. 1, pp. 3, 5); (Doc. 10, pp. 1-2). Specifically, Plaintiff alleges in his motion to proceed in forma pauperis that he is under imminent danger of serious physical injury because correction officers are putting poison in his food "to cause [him] to have a heart-attack and, tampering with [his] outgoing [and] incoming" legal mail. (Doc. 10, p. 2). However, in determining whether a frequent filer has satisfied section 1915(g), district courts are not required to "accept 'allegations that are fantastic or delusional and rise to the level of the "irrational or wholly incredible."'" Prall, 421 F. App'x at 145 (quoting Cross, 160 F.3d at 967). Thus, Plaintiff's allegation that the named correctional officers are "poisoning" his food will be rejected because such an allegation rises to the

13

level of irrational and/or wholly incredible. As a result, this claim fails to satisfy section 1915(g) and will be stricken without prejudice.

In regards to his claim that his mail is being tampered with by employees at SCI Coal Township, Plaintiff fails to satisfy section 1915(g) because he does not allege that he is under any danger of imminent physical harm due to the alleged tampering. Consequently, that claim will be stricken without prejudice.

Although not identified as reasons why Plaintiff is under imminent danger of serious physical injury in his motion to proceed in forma pauperis, the claims in his complaint, amended complaint, and informal complaint must be reviewed under section 1915(g). See, e.g., Chandler v. Smith, 2014 U.S. Dist. LEXIS 85300, at *1 (M.D. Pa. 2014) (Conner, J.). After a review of these filings, it is determined that Plaintiff's claim against Defendant Confer is the sole claim that satisfies section 1915(g) and will be allowed to proceed. As noted above, Plaintiff alleges that he is not receiving adequate medical care for the symptoms he is allegedly experiencing due to certain environmental conditions present at his place of confinement. (Doc. 1, p. 5). According to Plaintiff, he conveyed to Defendant Confer that he was "spitting up blood" because of the "coal-ash in this area." (Id.). Plaintiff claims that despite being informed about Plaintiff's condition, Defendant Confer walked away "without giving Plaintiff adequate medical care."

14

(Doc. 1, p. 5).

In <u>Brown v. Sec. Pennsylvania Dept. of Corrs.</u>, 486 F. App'x 299 (3d Cir. 2012), the plaintiff alleged that his conditions of confinement caused a number of physical ailments. <u>Id.</u> at 301. Specifically the plaintiff alleged that his housing unit was "constantly polluted with a fine white dust from the air-conditioning ducts which do nothing other than re-circulate warm and dirty air." <u>Id.</u> The plaintiff also alleged that his housing unit was also polluted by the "guards' tobacco smoke." <u>Id.</u> The plaintiff also alleged that his multiple symptoms were ongoing, specifically the plaintiff claimed that he could "'barely breath'" and felt "'as if he's suffocating.'" <u>Id.</u> The plaintiff further alleged that "his 'lungs are painful at times and tight, he is constantly coughing up mucous that is sometimes speckled with blood and other unknown matter, he has several headaches, watery eyes, and a change in his voice.'" <u>Id.</u> The plaintiff also claimed that his "continually breathing in large amounts of dirt, dust and smoke" "resulted in asthma-like symptoms, including clogged sinuses and wheezing sounds in his lungs." <u>Id.</u> The plaintiff claimed that he was being denied adequate medical care for these symptoms "in retaliation for his having filed various lawsuits and prison grievances." <u>Id.</u>

The Third Circuit analyzed whether the plaintiff's allegations satisfied the

exception contained in section 1915(g). In reaching its decision the Third Circuit

stated that:

> We are cognizant of the fact that [the plaintiff] has an extensive
> history of litigation, and we share the District Court's concerns
> that his claims of imminent danger have been included in his
> complaint solely to avoid application of the "three strikes"
> provision set forth in § 1915(g). Nevertheless, the PLRA
> permits even litigious prisoners to proceed without pre-
> payment of the fee if they are under imminent danger of serious
> physical injury.

Brown, 486 F. App'x at 302. The Third Circuit went on to hold that the plaintiff

"adequately alleges as much in this case, and those allegations were not

challenged. Significant problems with ventilation, at least where resulting health

problems are caused by ventilation issues, can meet imminent danger standard."

Id. (citing Cross, 160 F.3d at 965). Consequently, the Third Circuit found that the

plaintiff was "eligible to proceed without pre-paying the filing fee." Id.

As noted above, Plaintiff claims that he has spit up blood as a result of his

inhalation of the "coal-ash" allegedly present in the air at SCI-Coal Township.

(Doc. 1, p. 5). Thus, out of an abundance of caution, and in light of Brown,

Plaintiff's motion to proceed in forma pauperis will be provisionally granted as to

his claim of inadequate medical care against Defendant Confer.

Plaintiff's complaint does not advance any other claims that satisfy the

imminent danger exception to section 1915(g).  Rather, the remaining claims in Plaintiff's complaint either allege harms that have already occurred, and thus are no longer imminent, or fail to rise to a level that would cause serious physical injury.  (Doc. 1, pp. 2-6).  Consequently, those claims in Plaintiff's complaint against Defendants Luscavage; Brumfield; Krzykowski; Young; Jeremiah; Herrold; Peterson; Young; Eveland; Wilson; Armstrong; Wickham; Touchloskie; Walker; "D.L.;" Erdly; and Swartz will be stricken without prejudice.

Plaintiff's amended complaint and "informal complaint" also fail to include claims that establish that he is under imminent danger of serious physical injury. See (Docs. 12, 13).  Notably, Plaintiff does not make a specific allegation that he is under imminent danger of serious physical injury in either filing.  See (Id.).  In regards to his amended complaint, Plaintiff advances broad, conclusory allegations of "racially based mistreatment and punishment." (Doc. 12, p. 3).  Thus, even assuming that such allegations are an attempt to establish that he is under imminent danger of serious physical harm, courts are instructed to "'deny leave to proceed [in forma pauperis] when a prisoner's claims of imminent danger are conclusory or ridiculous." Ball, 726 F.3d at 468 (quoting Ciarpaglini, 352 F.3d at 331).  As a result, the allegations in Plaintiff's amended complaint fail to establish any additional claims that satisfy the imminent danger exception to section

1915(g).  Therefore, the claims in Plaintiff's amended complaint will be stricken without prejudice.

As to his "informal complaint," Plaintiff claims that nineteen dollars and seventy-one cents ($19.71) was stolen from his account, which fails to establish a claim of imminent danger of serious physical injury.  <u>See</u> (Doc. 13, pp. 1-2). Therefore, the claim in Plaintiff's "informal complaint" does not meet the imminent danger exception to section 1915(g) and thus, will be stricken without prejudice.

## III.  <u>CONCLUSION</u>

As a result of the foregoing, Plaintiff's motion to proceed <u>in forma pauperis</u> will be granted in part and denied in part.  <u>See</u> <u>Chandler</u>, 2014 U.S. Dist. LEXIS 85300, at *5-7 (granting in part and denying in part a motion to proceed <u>in forma pauperis</u> under section 1915(g)).  Specifically, Plaintiff's motion will be granted with respect to the claim that he received inadequate medical care for his "spitting up blood" due to his alleged inhalation of the "coal ash in the area." (Doc. 1, p. 5). Consequently, Plaintiff will proceed on that claim.  However, Plaintiff's motion to proceed <u>in forma pauperis</u> will be denied as to the remaining claims in his complaint and all claims presented in his amended complaint and "informal complaint," because those claims do not satisfy the imminent danger exception

18

under section 1915(g).  Therefore, those claims will be stricken without prejudice.

A separate Order will be issued.

Date: August 14, 2015                              /s/ William J. Nealon
                                                   **United States District Judge**